IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PACIFICA ROSEMONT LLC,
PACIFICA SENIOR LIVING LLC,
PACIFICA SENIOR LIVING MANAGEMENT LLC,
PACIFICA COMPANIES LLC,

       Plaintiffs,

v.                                  Case No. 24-cv-00093-KG-KK

LAURIE BUFFER, as Personal Representative
for the Wrongful Death Estate of
JEAN HILLYER SMITH, Deceased,

       Defendant.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs Pacifica Rosemont LLC, Pacifica Senior Living LLC, Pacifica Senior Living Management LLC, and Pacifica Companies LLC's Motion to Compel Arbitration (Motion) filed January 31, 2024.  (Doc. 3).  Defendant filed her Response on March 8, 2024.  (Doc. 14).  Plaintiffs filed their Reply on March 21, 2024.  (Doc. 17).  The Court held a hearing on this matter on April 5, 2024, at which counsel for both parties appeared and argued.  The Court then requested supplemental briefing, (Doc. 22), which the parties provided.  *See* (Docs. 26, 27).  Having considered the briefing, applicable law, and the parties' arguments at the hearing, the Court grants Plaintiffs' Motion.

*I.*    *Background*

The facts giving rise to this suit stem from a wrongful death, negligence, and Unfair Practices Act lawsuit filed in state district court.  In her state court complaint, Defendant alleges the following facts: From on or about September 30, 2021, through on or about February 7, 2022, Jean Hillyer Smith was a resident of Pacifica Senior Living Santa Fe (Facility).  (Doc. 1-5) at 11.  Ms. Smith's medical

1

history included "cognitive impairment and/or dementia, lower extremity edema, hypertension, syncope, hearing loss, macular degeneration, and/or osteoporosis."[1] *Id.* at 12. Ms. Smith also had a history of falls and was at risk for falls. *Id.* at 13.

In the early morning of January 12, 2022, Ms. Smith fell in the hallway of the Facility. *Id.* at 16–17. Shortly thereafter, she was transferred to the hospital by ambulance. *Id.* at 17. At the hospital, she was treated and diagnosed with a litany of serious injuries. *Id.* Less than a month later, Ms. Smith passed away. *Id.* at 18.

Defendant alleges that the Facility's actions and omissions resulted in Ms. Smith's fall and resulting injuries, which ultimately led to her death. *Id.* As a result, on November 28, 2023, Defendant filed a lawsuit in state district court. *See generally id.* Plaintiffs then filed this action in federal court, asking the Court to compel arbitration. (Doc. 1).

Two relevant documents in this case include the Power of Attorney form and Residence and Care Agreement. A few years before Ms. Smith became a resident at the Facility, she executed a Power of Attorney, designating Ms. Buffer as her agent. (Doc. 1-2). This Power of Attorney form immediately granted Ms. Buffer authority over Ms. Smith's "Personal and Family Maintenance" and "Claims and Litigation" among other things. *Id.* at 2–3, 5. "The meaning of authority over subjects listed on this [Power of Attorney] form is explained in the Uniform Power of Attorney Act." *Id.* at 1. Under the Uniform Power of Attorney Act, authority relating to Ms. Smith's Personal and Family Maintenance provided Ms. Buffer with the power to "perform acts necessary to maintain the customary standard of living of the principal," "provide living quarters for the [principal]…by purchase, lease or other contract," and "pay expenses for necessary health care and custodial care on behalf of the [principal]."

---

[1] Defendant has not indicated a desire to file this information under seal. Still, the Court acknowledges the sensitive nature of Ms. Smith's personal medical history, while also noting that the parties filed this action in open court.

NMSA 1978, § 45-5B-213(A)(1), (3), (5) (2012).  The Claims and Litigation authority provided Ms.

Buffer the power to "submit to alternative dispute resolution."  NMSA 1978, § 45-5B-212(E).

A few years later, on September 27, 2021, as part of Ms. Smith's Residence and Care

Agreement, Ms. Buffer executed the Arbitration Agreement with the Facility.  (Doc. 1-4) at 23–25.[2]  A

few days after that, Ms. Smith was admitted as a resident to the Facility.  (Doc. 1-5) at 1.

II.      *Legal Standard*

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, written agreements to submit to

arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects "both a liberal federal policy

favoring arbitration and the fundamental principle that arbitration is a matter of contract."  *Sanchez v.*

*Nitro-Lift Techs, L.L.C.*, 762 F.3d 1139, 1145 (10th Cir. 2014) (quoting *AT&T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 339 (2011)).  Thus, where a contract contains an arbitration clause, there is a

presumption of arbitrability, and any doubts should be resolved in favor of arbitrability.  *AT&T Techs.,*

*Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also In re Cox Enters., Inc. Set-top*

*Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1201 (10th Cir. 2016) ("[Courts] begin with a

strong presumption that the dispute is arbitrable.").  This presumption exists even if compelling

arbitration results in piecemeal litigation.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

U.S. 1, 20 (1983) ("[T]he [FAA] *requires* piecemeal resolution when necessary to give effect to an

arbitration agreement.").

III.     *Analysis*

---

[2] Ms. Buffer initialed the Arbitration Agreement, and she signed the Residence and Care Agreement as
the "Responsible Party." Ms. Smith signed the Residence and Care Agreement as the "Resident," and
Pamela C. Plaza signed on behalf of Pacifica Senior Living Santa Fe.  (Doc. 1-4) at 25.

In their Motion to Compel Arbitration, Plaintiffs claim Ms. Buffer, acting as Ms. Smith's agent, entered into a valid Arbitration Agreement, binding Ms. Smith and her estate. (Doc. 3) at 2–3. In her response, Defendant argues that (1) no valid Arbitration Agreement exists; (2) the Court lacks jurisdiction; and (3) the Arbitration Agreement is substantively unconscionable. (Doc. 14) at 1–2. The Court addresses the parties' arguments below.

### A. The Arbitration Agreement Binds Plaintiffs and Defendant

#### 1. The Arbitration Agreement is Valid

Defendant argues that the Arbitration Agreement is not valid because it is an incomplete or inaccurate copy. *Id.* at 3. In support, Defendant relies solely on purportedly misnumbered pages. *Id.* The Court is unconvinced that this alleged mispagination invalidates the agreement. As Plaintiffs point out, "Defendant fails to offer proof that the document presented is not a true and authentic copy of the Arbitration Agreement…[and] does not contest that her name, signature, and initials appear on the agreement." (Doc. 17) at 2. Without meaningful evidence to the contrary, the Court finds that the Arbitration Agreement Plaintiffs provided is valid.

#### 2. Ms. Buffer Bound Ms. Smith to the Arbitration Agreement

At the hearing on April 5, 2024, Defendant argued, for the first time, that the Power of Attorney did not grant Ms. Buffer the authority to bind Ms. Smith to the Arbitration Agreement. Draft Transcript of Hearing at 24:2–17 (taken April 5, 2024).[3] Defendant's argument, however, is at odds with New Mexico law.

As discussed above, the Power of Attorney granted Ms. Buffer the authority to "perform acts necessary to maintain the customary standard of living of [Ms. Smith]," "provide living quarters for

---

[3] The Court's citation to the hearing's transcript refers to the court reporter's original, unedited versions. Any final transcript may contain slightly different page and line numbers.

[Ms. Smith]…by purchase, lease or other contract," and "pay expenses for necessary health care and custodial care on behalf of [Ms. Smith]." § 45-5B-213(A)(1), (3), (5).  Ms. Buffer clearly had the authority to enter into the Residence and Care Agreement for Ms. Smith's custodial care and to "submit to alternative dispute resolution," such as the Arbitration Agreement, on Ms. Smith's behalf.  *See* § 45-5B-212(E).  Thus, when Ms. Buffer executed the Arbitration Agreement, she bound Ms. Smith.[4]

> 3.   *The Arbitration Agreement Binds Plaintiffs as Intended Third-Party Beneficiaries*

Defendant next argues that the Court should not order Pacifica Senior Living LLC, Pacifica Senior Living Management LLC, and Pacifica Companies LLC to arbitrate because they did not sign the Arbitration Agreement and are not intended third-party beneficiaries.  (Doc. 14) at 3–4; (Doc. 27) at 5–8.  While it is true that the Arbitration Agreement was signed on behalf of only Pacifica Rosemont LLC, Plaintiffs contend that the Arbitration Agreement also binds Pacifica Senior Living LLC, Pacifica Senior Living Management LLC, and Pacifica Companies LLC as intended third-party beneficiaries.  (Doc. 26) at 4–7.

Generally, in New Mexico, "one who is not a party to a contract cannot maintain suit upon it." *Fleet Mortg. Corp. v. Schuster*, 1991-NMSC-046, ¶ 4.  However, a "third party may be a beneficiary of such contract, and as a beneficiary may have an enforceable right against a party to a contract." *Id.* New Mexico law provides for two types of third-party beneficiaries: intended and incidental, and "[o]nly intended beneficiaries can seek enforcement of a contract." *Tarin's, Inc. v. Tinley*, 2000-NMCA-048, ¶ 13 (citations omitted).  "The paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries." *Id.* (citation omitted).

---

[4] Because Ms. Buffer executed the valid Arbitration Agreement binding Ms. Smith's estate, the Court need not consider the parties' third-party beneficiary arguments as it relates to Ms. Smith.

In *Rivera v. Am. Gen. Fin. Servs., Inc.*, the New Mexico Court of Appeals considered whether the arbitration provision conferred third-party beneficiary status to an insurer who was not a party to the agreement.  2010-NMCA-046, ¶¶ 20–22, *rev'd on other grounds by* 2011-NMSC-033.  Based on the language in the arbitration provisions, the court concluded that the insurer was a third-party beneficiary. *Id.* at ¶ 22.  The court pointed out that under the arbitration provisions, the plaintiff agreed to arbitrate "all claims or disputes" against "all persons or entities who may be liable to [either of the contracting parties] regarding any…Covered Claim."  *Id.*  The court explained that the insurer was an "entity" who may be liable to the plaintiff regarding any covered claims, which included "any dispute involving 'an insurance product…purchased in connection with [the agreement].'"  *Id.*  As a result, the court held that "[f]rom the face of the agreement, both parties intended to confer to insurers…the right to compel arbitration under the terms of the Arbitration Provisions," and the insurer "belong[ed] to a class of entities granted rights under the Arbitration Provisions."  *Id.*

Here, the Arbitration Agreement contains strikingly similar language to the arbitration provision in *Rivera*.  It reads:

> By initialing below, you agree that *any and all claims and disputes* arising from or related to this Agreement or to your residency, care or services at the Community, *whether made against us or any other individual or entity*, including without limitation, personal injury claims, shall be resolved by submission to neutral, binding arbitration in accordance with the Federal Arbitration Act.

(Doc. 1-4) at 23.  Like the insurer in *Rivera*, Pacifica Senior Living LLC, Pacifica Senior Living Management LLC, and Pacifica Companies LLC all belong to a class of entities granted rights under the Arbitration Agreement.  Specifically, the Arbitration Agreement indicates the parties' intent to grant "any other individual or entity" a right to compel arbitration for "any and all claims and disputes related

to this Agreement or [Ms. Smith's] residency, care or services." [5]  *Id*.  Thus, the Court concludes that the

Arbitration Agreement provides Plaintiffs the right to compel arbitration as third-party beneficiaries.

### B.  The Court has Jurisdiction

Next, Defendant argues that the Court lacks jurisdiction for two reasons.  First, Defendant

contends that Plaintiffs fail to establish that the Court has original jurisdiction because the FAA's

interstate commerce requirement is not satisfied.  (Doc. 14) at 11.  Second, Defendant argues that

Plaintiffs failed to include a necessary and indispensable party.  (Doc. 14) at 4–11.  Defendant's

arguments are unavailing.

### 1.  The FAA's Interstate Commerce Requirement is Satisfied

Section 2 of the FAA "applies to arbitration agreements that are part of a written contract

'evidencing a transaction involving interstate commerce.'"  *THI of New Mexico at Hobbs Center, LLC v.*

*Spradlin*, 893 F. Supp. 2d 1172, 1183 (D.N.M. 2012) (quoting 9 U.S.C. § 2).  Under Section 2, the term

"involving commerce" is the functional equivalent of the term "affecting commerce," and therefore

"signal[s] the broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v.*

*Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265,

273–74 (1995)).  Consequently, the FAA "extends to transactions 'in individual cases without showing

any specific effect upon interstate commerce if in the aggregate the economic activity in question would

---

[5] The parties also present arguments regarding whether Pacifica Senior Living Management LLC and
Pacifica Companies LLC can compel arbitration under a different section of the Arbitration Agreement,
which "binds all parties to this Agreement *and their spouses, heirs, representatives, executors,*
*administrators, successors, assigns, managers, and agents* as applicable."  (Doc. 17) at 2 (quoting (Doc.
1-3)); *see also* (Docs. 26, 27).  Because the Court finds that Pacifica Senior Living Management LLC
and Pacifica Companies LLC can compel arbitration for any claims related to Ms. Smith's residency,
care, or services as "entities," it need not determine whether these Plaintiffs are managers or agents of
Pacifica Rosemont LLC.

represent a general practice subject to federal control.'" *Spradlin*, 893 F. Supp. 2d at 1184 (quoting *Citizens Bank*, 539 U.S. at 56–57).

In this case, Plaintiffs provide an affidavit from Pacifica Senior Living Santa Fe's Executive Director, Ms. Anne Licon-Kemper, stating that Pacifica Rosemont LLC ordered equipment and supplies from out-of-state vendors and suppliers. (Doc. 1-6). Pacifica Senior Living Santa Fe then used the supplies and equipment for the general care and services of all Pacifica Senior Living Santa Fe residents. *Id.* Defendant counters that equipment and supplies ordered from out-of-state vendors and suppliers is not sufficient to invoke federal jurisdiction. (Doc. 14) at 12. Defendant, however, ignores that courts throughout the country have determined that such evidence satisfies the FAA's interstate commerce requirement. *Spradlin,* 893 F. Supp. 2d at 1184; *see e.g., Estate of Ruszala v. Brookdale Living Communities, Inc.* 415 N.J. Super. 272, 1 A. 3d 806, 817–18 (2010) (determining that facilities' purchase of out-of-state supplies, food, medicine, and equipment involved interstate commerce); *see also Rainbow Health Care Center, Inc. v. Crutcher,* 2008 WL 268321, at *5 (N.D. Okla.) (determining that buying supplies from out-of-state vendors, standing alone, is enough to show contract involving interstate commerce). Thus, based on the weight of authority and the FAA's broad policy favoring arbitration, the Court finds the interstate commerce requirement satisfied.

### 2.   *Anne Licon-Kemper is Not a Necessary and Indispensable Party*

For FAA actions based on federal diversity jurisdiction, "circuit decisions [have been] unanimous in looking only to the citizenship of the parties to the federal action" to evaluate diversity. *Spradlin*, 893 F. Supp. 2d at 1179 (quoting *Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 489 (8th Cir. 2010)). Additionally, "[a] traditional principle of diversity jurisdiction is that it cannot be defeated by a non-diverse joint tortfeasor who is not a party to the federal action, unless that

party is indispensable under Rule 19." *Id.* (quoting *Rutherford*, 605 F.3d at 490–91).  In this case,

Defendant argues that Ms. Anne Licon-Kemper is a necessary and indispensable party, and her joinder

would defeat diversity, depriving this Court of jurisdiction.  (Doc. 14) at 4–5.  The weight of authority,

however, counsels otherwise.

To determine whether an absent party is necessary and indispensable, courts apply a two-step

analysis according to Federal Rule of Civil Procedure 19.  *Sac and Fox Nation of Missouri v. Norton*,

240 F.3d 1250, 1258 (10th Cir. 2001).  First, a court must determine whether the party in question is

necessary under Rule 19(a).  *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1096

(10th Cir. 2003) (citations and internal quotations omitted).  Under Rule 19(a)(1),[6] a party is necessary

if:

> (A) in that person's absence, the court cannot accord complete relief among existing
> parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated
> that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest
>> or
>> (ii) leave an existing party subject to substantial risk of incurring double, multiple,
>> or otherwise inconsistent obligations because of the interest.

Only if a party is necessary does the court proceed to the second step: determining whether the

party is indispensable under Rule 19(b).  *Salt Lake Tribune Pub. Co.*, 320 F.3d at 1096.  "A necessary

party can be considered an indispensable party only if, 'in equity and good conscience,' a court should

not allow the action to proceed in the party's absence."  *Sac and Fox Nation of Missouri*, 240 F.3d at

1259 (quoting Fed. R. Civ. P. 19(b)).  A court must balance the following Rule 19(b) factors when

making an indispensability determination:

> [1] to what extent a judgment rendered in the person's absence might be prejudicial to the
> person or those already parties; [2] the extent to which, by protective provisions in the
> judgment, by the shaping of relief, or other measures, the prejudice can be lessened or

---

[6] Rule 19(a)(2), (3) are inapplicable here.

9

avoided; [3] whether a judgment rendered in the person's absence will be adequate; [4] whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.*

With respect to federal actions to compel arbitration, "every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19." *Spradlin*, 893 at 1179 (quoting *Rutherford*, 605 F.3d at 491). More specifically, courts have determined that nursing home administrators—such as Ms. Licon-Kemper—"are not necessary parties under Rule 19 when another alleged tortfeasor seeks to enforce arbitration." *Id.* (citing *Rutherford*, 605 F.3d at 491 (determining that non-diverse administrator of nursing home was not indispensable party to arbitration action between nursing home and resident of nursing home); *see also THI of New Mexico at Vida Encantada, LLC v. Archuleta*, 2012 WL 8169886, at *2 (D.N.M.) (determining that nursing home employee whose joinder in federal action would destroy diversity was not necessary and indispensable party).

Here, Ms. Licon-Kemper is not a necessary or indispensable party under Rule 19 because this Court (1) can administer complete relief—an order compelling arbitration—among the existing parties, and (2) Ms. Licon-Kemper is not claiming an interest in this arbitration action that will be impaired in her absence. *See id* at 1179–80.

10

C. *The Arbitration Agreement is Not Unconscionable*

Lastly, Defendant argues that the Arbitration Agreement is substantively unconscionable. Defendant contends that Arbitration Agreement unfairly and unreasonably permits Pacifica Rosemont, LLC to pursue its likeliest claims—small claims and eviction actions—while forcing the non-drafting party to arbitrate her likeliest claims. (Doc. 14) at 13–15. In support, Defendant points to New Mexico Supreme Court authority holding that arbitration agreements are substantively unconscionable when they "unjustifiably require the non-drafting party to arbitrate its likeliest claims, while allowing the drafting party to pursue its likeliest claims through litigation." *Id.* at 14 (citing *Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 12). In their reply, Plaintiffs argue that "[f]ederal law forecloses this Court from invalidating the Arbitration Agreement based on New Mexico unconscionability grounds." (Doc. 17) at 6. The Court finds Plaintiffs' arguments persuasive.

As it relates to arbitration agreements, Tenth Circuit precedent rejects the New Mexico state court approach to unconscionability. The Tenth Circuit has held that the "'rationale for the [New Mexico] state unconscionability rule runs counter to Supreme Court precedent' and that the FAA preempts New Mexico unconscionability law when the state law is based on the belief that arbitration is inferior to litigation." *Pacifica Rosemont LLC v. Estate of Montoya by and through Ruyle*, 2023 WL 5176125, at *4 (D.N.M.) (quoting *THI of N.M. at Hobbs Center, LLC v. Patton*, 741 F.3d 1162, 1169 (10th Cir. 2014)). Under *Patton*, this Court "may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." 741 F.3d at 1168 (citation omitted). "This legal maxim applies even though 'the claims most likely to be brought by residents are the ones that must be arbitrated, while the claims most likely to be brought by [the nursing home] are to be litigated in court.'" *Ruyle*, 2023 WL 5176125, *4 (citing *Patton*, 741 F.3d at 1168–69).

Thus, because *Patton* is binding precedent, the Court is foreclosed from invalidating the Arbitration

Agreement on unconscionability grounds.

      *D.  Neither Discovery nor an Evidentiary Hearing are Necessary*

      Defendant requests that the Court allow the parties to conduct discovery and an evidentiary

hearing relating to the making, enforceability, and validity of the Arbitration Agreement.  (Doc. 14) at

23.  Defendant also requests the Court to allow discovery "regarding the additional defenses raised in

the Defendant's Answer & Affirmative Defenses, including but not limited to waiver, fraud, duress, and

unconscionability."  *Id.* at 24.  Defendant, however, does not actually dispute the fact that she executed

the Arbitration Agreement.  Instead, she argues that the alleged mispagination of the agreement suggests

the Arbitration Agreement is incomplete or inaccurate and therefore not valid.  *Id.* at 3.  The Court,

however, does not consider this to be an appropriate basis for an evidentiary hearing.  As discussed

above, the evidence in the record supports the fact that Ms. Buffer executed the Arbitration Agreement

on behalf of Ms. Smith.  The Court finds no reason to allow additional discovery and continue this

litigation.  Thus, the Court denies Defendant's requests.

IV.    *Conclusion*

      The Court therefore concludes that (1) it does not lack jurisdiction; (2) a valid and enforceable

Arbitration Agreement exists binding all the parties in this case; and (3) the Arbitration Agreement is not

unconscionable.  As a result, and given the liberal federal policy favoring arbitration, the Court grants

Plaintiffs' Motion to Compel Arbitration.

      IT IS ORDERED.

                                 _____

                                 UNITED STATES DISTRICT JUDGE